Richard J. McCord, Esq.
Anthony W. Cummings, Esq.
Robert D. Nosek, Esq.
CERTILMAN BALIN ADLER & HYMAN, LLP
Counsel to the Chapter 7 Trustee,
Richard J. McCord, Esq.
90 Merrick Avenue
East Meadow, NY 11554
(516) 296-7000

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
In Re:

                                          Chapter 7

SID BOYS CORP.                        Case No. 21-42207-ess
DBA KELLOGG'S DINER

                            Debtor,
-----------------------------------------------------------------X   **COMPLAINT**
RICHARD J. McCORD, ESQ., as Chapter 7
Trustee of the Estate of Sid Boys Corp.
dba Kellogg's Diner,

                        Plaintiff,           Adv. Proc. No.  24-_____ -ess

        -against-

IRENE SIDERAKIS individually and as the
administrator of the
ESTATE OF CHRISTOS SIDERAKIS,

                        Defendant.
-----------------------------------------------------------------X

       Plaintiff, Richard J. McCord, Esq., the Chapter 7 Trustee (the "Plaintiff" or "Trustee") of

the bankruptcy estate of Sid Boys Corp. dba Kellogg's Diner (the "Debtor"), by and through its

attorneys, Certilman Balin Adler & Hyman, LLP, complaining of the defendants, Irene Siderakis

individually and as the administrator of the Estate of Christos Siderakis, respectfully alleges and

sets forth to this Court as follows:

1

## NATURE OF ADVERSARY PROCEEDING

1.      This proceeding is brought pursuant to This action arises under 11 U.S.C. §§ 541, 542, 544, 548, 549, 550 and 551 and Rules 6009, 7001 and 7008 of the Federal Rules of Bankruptcy Procedure (hereinafter "Bankruptcy Rules"), New York Debtor & Creditor Law ("DCL") § 271 *et seq*. and New York common law.

2.      Plaintiff seeks to recover damages for breach of fiduciary duty, corporate waste and mismanagement as well as related and consequential claims all caused through the course of conduct of the Defendant Irene Siderakis, the owner and president of the Debtor while acting in the capacity of manager of Debtor, a debtor-in-possession, during its voluntary bankruptcy proceeding.

3.      Defendant Irene Siderakis had a fiduciary duty to protect and conserve estate property for the benefit of creditors; a duty to avoid self-dealing; a duty to avoid damaging the estate; a duty to refrain from acting in a manner that could hinder a successful reorganization; and a duty to retain competent and qualified professionals to assist in the business affairs of Debtor.

4.      Defendant Irene Siderakis breached her fiduciary duties through a course of conduct reflecting negligence, indifference and self-dealing that resulted in damages to Debtor as detailed below.

5.      This proceeding is also brought to expunge claims filed against the Debtor by Defendant Irene Siderakis individually and as the administrator of the Estate of Christos Siderakis.

## JURISDICTION AND VENUE

6.      The Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. §§157 and 1334.

8228848.1

7.      Venue of this case and of this Adversary Proceeding is proper pursuant to 28 U.S.C. §1409.

8.      This Adversary Proceeding is a core proceeding as defined in 28 U.S.C. §§157(b)(1), 157(b)(2)(A), 157(b)(2)(E) and 157(b)(2)(O).

## PARTIES

9.      Plaintiff, Richard J. McCord, Esq., is the Chapter 7 Trustee of the Estate of Sid Boys Corp. dba Kellogg's Diner (hereinafter the " Debtor"), duly appointed pursuant to 11 U.S.C. § 704 and has standing to commence this action on behalf of Debtor.

10.     Upon information and belief, Defendant Irene Siderakis (hereinafter the "Siderakis" or "Defendant") was and is an individual and citizen of the State of New York.

11.     Upon information and belief, Defendant Siderakis has, and at all times hereinafter mentioned had, an office located in the State of New York from which office Defendant did and does regularly and continually transact and conduct business.

12.     Upon information and belief, the Estate of Christos Siderakis is administered by Irene Siderakis, the widow of decedent Christos Siderakis, who died on April 25, 2018.

## BACKGROUND FACTS

13.     On August 28, 2021 (the "Petition Date"), the Debtor filed a voluntary petition [ECF Doc. No. 1] (the "Petition") for relief pursuant to Chapter 11 of Title 11 of the United States Code (U.S.C. §101 et. seq., "Bankruptcy Code") by its counsel, the Kaylie Firm, in the United States Bankruptcy Court, Eastern District of New York at Brooklyn (the "Court").

14.     As part of its filing, the Debtor elected to file as a "small business debtor" as that term is defined in Section 101(51D) of the Bankruptcy Code by checking the appropriate

3

corresponding box on the Petition.

15. The Debtor declined to proceed under Subchapter V of Chapter 11 of the Bankruptcy Code.

16. Upon the filing of the Petition, the Clerk of the Court assigned case number 21-42207-ess to the Debtor's Chapter 11 bankruptcy case (the "Case").

17. From the Petition Date until the Case was converted to one under chapter 7 of the Bankruptcy Code, the Debtor remained in possession of its property and continued in the management and operation of its business as a debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

18. On January 30, 2023, the Court entered an order [ECF Doc. No. 151] (the "Conversion Order") converting this Case to one under Chapter 7 of the Bankruptcy Code.

19. Upon entry of the Conversion Order, the Debtor was no longer a debtor in possession in possession of its property and was not permitted to continue in the management and operation of its business.

20. By Notice of Appointment of Trustee dated February 1, 2023 [ECF Doc. No. 153], the Plaintiff Trustee was duly appointed the Chapter 7 Trustee ("Trustee") of the Debtor's bankruptcy estate, has qualified and is and has been the permanent trustee in this Case.

21. By Order of this Court entered on February 16, 2023 [ECF Doc. No. 161], the law firm of Certilman Balin Adler & Hyman, LLP, was retained as general bankruptcy counsel to the Trustee.

22. By order of the Court entered on February 16, 2023 [ECF Doc. No. 163] (the "721 Order"), the Trustee was authorized to operate the Business under Section 721 of the Bankruptcy

4

Code.

**Debtor's Retention of Counsel**

23.     Upon information and belief, the Debtor first retained the Kaylie Firm prior to the Petition Date by a retainer letter dated July 8, 2021 (the "Retainer Letter").

24.     The Retainer Letter was signed by Kaylie on behalf of the Kaylie Firm.

25.     The Retainer Letter was countersigned by Irene Siderakis ("Siderakis") as the President of the Debtor.

26.     The Debtor retained counsel for "the preparation, commencement and processing of a proceeding under chapter 11 of the United States Bankruptcy Code." *See* Retainer Letter.

27.     The Retainer Agreement set forth many areas which the Debtor requested that the Firm render to the Debtor, including:

- Advising the Debtor with respect to its powers and duties as debtor and debtor in possession in the continued operation of its business[;]

- […] advising and consulting on the conduct of the case, including all legal and administrative requirements of operating in Chapter 11[;]

- [t]aking all necessary action to protect and preserve the Debtor's estate[;]

- [p]reparing and negotiating on the Debtor's behalf any chapter 11 plans, disclosure statements, and any related agreements and/or documents, and taking any necessary action on behalf of the Debtor to obtain confirmation of any such plan(s)[;]

5

- [a]dvising the Debtor in connection with any sale of assets or other transactions[;]

- [p]erforming other necessary legal services and providing other necessary legal advice to the Debtor in connection with this Chapter 11 Case; and

- [a]ppearing before this Court … and the United States Trustee, and protecting the interests of the Debtor's estate before such court and the United States Trustee."

Ret. App. ¶ 9.

28.     Upon information and belief, the Kaylie Firm accepted Debtor's retainer and agreed to render and did thereafter render to Debtor legal services and representation in connection with, inter alia, preparation for and the conduct of the pending bankruptcy proceeding.

29.     Subsequent to the Petition Date, by application filed on November 16, 2021, Debtor sought the authorization of the Court to retain the Kaylie Firm as its general bankruptcy counsel to provide legal services and representation to Debtor in connection with its bankruptcy proceeding [see ECF Doc. No. 29], which application was amended and filed on November 17, 2021.  See ECF Doc. No. 31 (the "Retention Application").

30.     A copy of the Retainer Agreement was annexed to the Retention Application.

31.     The Kaylie Firm asserted in its declaration in support of the Retention Application that "[s]ince its retention, the [Kaylie Firm] has become uniquely familiar with the Debtor's affairs as well as many of the potential legal issues that might arise in the context of the Debtor's Chapter 11 Case."  Kaylie Dec. ¶ 4

6

32.     The Kaylie Firm asserted that it "believe[d] that it has assembled a highly qualified team of professionals and paraprofessionals to provide services to the Debtor during this case and is thus qualified to represent the Debtor." *Id.* at ¶ 5.

33.     Kaylie further asserted on her own behalf that "I have more than 25 years of experience in consumer bankruptcy for debtors and in commercial bankruptcy for creditor representation, and related matters." *Id.* at ¶ 6.

34.     She further asserted that "I am the attorney with primary responsibility on the [Kaylie Firm]" engagement. *Id.* She also stated "Other professionals and paraprofessionals in my offices practice, and in other practice areas, as appropriate, will participate in the representation of the Debtor in this Chapter 11 Case. *Id.* at ¶ 7.

35.     By Order of the Court entered on January 13, 2022 [ECF Doc. No. 31], the Retention Application of the Kaylie Firm to become counsel to the Debtor was approved by the Court.

36.     Defendant breached her fiduciary duties to Debtor by among other things, relying upon incompetent and unqualified professionals, specifically, the Kaylie Firm, thereby missing deadlines for filing to assume or reject the Lease as well as confirming a plan resulting in the case being converted from a Chapter 11 case to one under Chapter 7 of the Bankruptcy Code.

**Defendant's Fiduciary Duties**

37.     On August 28, 2021, Defendant signed the Debtor's petition in connection with its bankruptcy proceeding as owner, president; prior to as well as during the bankruptcy proceeding, Defendant assumed control as well as decision-making authority for the Debtor and as such became a fiduciary owing fiduciary duties to Debtor and those with an interest in the Debtor's

7

estate.

38.     The control and decision making authority rendered to Defendant by Debtor included without limitation, *inter alia*, the obligation and duty to take proper action with respect to the Debtor's powers and duties as a debtor-in-possession in accordance with the Bankruptcy Code in the continued operation of the Debtor's business and affairs; the obligation and duty to prepare all necessary applications, operating reports and other documents required by the Bankruptcy Code, Bankruptcy Rules and Local Rules; the obligation and duty to faithfully perform all things required of the Debtor, which may have been necessary in connection with its attempt at reorganization under the Bankruptcy Code; and the obligation and duty to assist the Debtor in the development and implementation of a plan of reorganization.

39.     While discharging these duties, Defendant became obligated to avoid self-dealing, infidelity, theft and misappropriation of corporate assets among other things.

40.     Defendant became obligated to and had a duty to provide to Debtor proper guidance and instruction and to render and execute such control and decision making authority as is customarily provided by others acting as a fiduciary in performing their duties and obligations surrounding the day to day operations of a Debtor's estate during a bankruptcy proceeding.

41.     Defendant had a fiduciary duty to protect and conserve estate property for the benefit of creditors.

**Debtor's Business**

42.     Debtor, at the time the Petition was filed and throughout the bankruptcy proceeding, operated a 24-hour diner (the "Diner Business") with its principal place of business at 514/518 Metropolitan Avenue, Brooklyn, State of New York (the "Premises").

8228848.1

43.     However, due to Defendant's course of conduct and breach of fiduciary duties, the Court entered an order [ECF Doc. No. 151] (the "Conversion Order") converting the case from a Chapter 11 case to one under Chapter 7 of the Bankruptcy Code.

44.     As a direct and proximate result of Defendant's course of conduct which directly caused the conversion of the case, the Debtor's Estate will, to the detriment of its creditors, incur substantial damages in the form of commissions to be paid to the Trustee for all monies disbursed in the case by the Trustee which claim was solely and completely created as a result of the conversion of the Case, thereby damaging the Debtor's Estate in an amount to be proven at trial.

**The Lease Rejection and Plan Confirmation**

45.     The Debtor leased the Premises pursuant to a "Net Net Lease," dated as of September 19, 2013, by and between the Debtor, as tenant, and 514 Fioto Property Corp. as landlord (the "Lease").

46.     The Lease provided for a thirty (30) year initial term beginning October 1, 2013.

47.     Prior to the case conversion, Debtor's diner/restaurant business, the Diner Business, was an ongoing concern with valuable leasehold rights that extended through the year 2043.

48.     The Lease contained a right of first refusal to purchase the Premises with the right to match the purchase price and terms offered by a prospective third party purchaser.

49.     The Debtor, pursuant to Bankruptcy Code, Section 365 and Bankruptcy Rule 6006, possessed the right to assume or reject its unexpired Lease within a specific statutory time period failing which the Lease would be deemed rejected by operation of law.

50.     The statutory time period during which Debtor was required to assume or reject the Leases expired on or about March 28, 2022, which was 210 days after the Order for relief.

8228848.1

51.     The deadline for a small business debtor to file a plan to the exclusion of all other persons is one-hundred eighty (180) days after the Petition Date.

52.     The 180th day after the Petition Date was Thursday, February 24, 2022.

53.     The Debtor did not file any plan on or before February 24, 2022.

54.     The Bankruptcy Code permits a debtor extend the plan filing deadline, provided, however, that "the plan and disclosure statement (if any) shall be filed no later than 300 days after the date of the order for relief."  11 U.S.C. § 1121(e)(2).

55.     The 300th day after the Petition Date was Friday, June 24, 2022.

56.     The Debtor filed a Chapter 11 Small Business Disclosure Statement on June 24, 2022.  [ECF Doc. No. 73] (the "Plan").

57.     Debtors sought extensions in the time to confirm the Plan with the final such order extending the period of time by which to confirm the Plan from October 31, 2022, to December 30, 2022.

58.     During the times relevant to this proceeding Defendant failed to act in the best interest of Debtor through a course of conduct reflecting negligence, indifference and self-dealing, by failing to act within the relevant statutory time period to assume the Lease and to confirm a plan, in violation of her fiduciary duties to Debtor.

**The Sales Taxes and Other Charges**

59.     In the State of New York and the City of New York sales tax applies to retail sales of certain tangible personal property and services.

60.     In New York tax collection is administered by the New York State Department of Taxation and Finance and the New York City Department of Finance with sales taxes being

10

collected from customers by merchants. The sales taxes collected by merchants belong to the State and/or City of New York.

61.     As a retail establishment in the business of selling taxable goods or services, as is all others in a similar status, Debtor was required to act as an agent of the State and/or City of New York by collecting tax from purchasers and passing it along to the appropriate tax authority.

62.     At all times relevant to these proceedings, Debtor was responsible to manage the taxes collected and to remain in compliance with state and local laws since the failure to do so can lead to penalties and interest charges.

63.     Likewise, the State of New York imposes through labor laws, unemployment insurance contributions on employers.

64.     During times relevant to the bankruptcy proceedings Defendant failed to act in the best interest of Debtor through a course of conduct reflecting negligence, indifference and self-dealing and failed to comply with the requirements imposed by sales tax law and labor law, in violation of her fiduciary duties to Debtor.

**The Wage Claims**

65.     As an employer in the State of New York, Debtor was obligated to pay employees for every hour they work, including work before and/or after scheduled shifts and time spent traveling during scheduled shifts.

66.     If employees worked more than 40 hours in a week, Debtor as employer was obligated to pay time and a half for overtime for hours worked over 40.

67.     Additionally, New York State law requires, among other things, employers to notify employees of their wages when hired, using a mandatory form.

8228848.1

68.     During times relevant to these proceedings Defendant failed to act in the best interest of Debtor through a course of conduct reflecting negligence, indifference and self-dealing and failed to comply with employment or labor laws, in violation of her fiduciary duties to Debtor.

**The Corporate Assets**

69.     The Debtor's assets included cash, accounts receivable, chattel, fixtures and equipment, as well as other personal property.

70.     Through her course of conduct the very basic rule of corporate law that a company is a legal entity that is distinct from its shareholders, such that a company's property and assets are not owned by its shareholders, was purposefully and deliberately ignored by Defendant.

71.     During times relevant to the bankruptcy proceedings Defendant failed to act in the best interest of Debtor through a course of conduct reflecting negligence, indifference and self-dealing, and failed to refrain from misappropriation and waste of corporate assets, in violation of her fiduciary duties to Debtor.

**AS AND FOR A FIRST CAUSE OF ACTION
AGAINST DEFENDANT SIDERAKIS**
**(Breach of Fiduciary Duty, Corporate Mismanagement and Waste
– Lease Rejection)**

72.     Plaintiff repeats and realleges each and every allegation as set forth in Paragraphs "1" through "71" as though fully set forth herein.

73.     Defendant owed a duty to Debtor to exercise such skill, prudence and diligence commonly possessed and exercised by fiduciaries, to operate Debtor in a competent manner and to exercise proper decision making in connection with the matter in which Defendant was acting as a fiduciary.

74.     Defendant's role in directing actions for the benefit of Debtor constitutes a fiduciary

8228848.1

relationship due to the access and use of confidential information and reliance Debtor and those with an interest in the Debtor's Estate placed in Defendant.

75.    Defendant failed to timely exercise her control, and decision-making authority for Debtor to assume Debtor's Lease, failed to move for an extension of time within which for Debtor to assume Debtor's Lease, failed to timely serve and file an appropriate notice on behalf of Debtor assuming said Lease by March 28, 2022 when it was deemed rejected by operation of law, and failed to avoid Debtor the consequences of failing to timely assume the Lease.

76.    The Lease was a valuable asset of the Debtor's estate and the timely assumption by Defendant would have permitted a sale of the Debtor's business, or an assignment of its Leases to a third party for significant higher consideration than the deal that was ultimately negotiated and closed.

77.    Defendant's failure to act on behalf of Debtor within the relevant statutory time period, failure to diligently and timely preserve Debtor's rights therein and Defendant's lack of due diligence in performing her fiduciary duties was negligent and actionable.

78.    Defendant's deliberate or negligent course of conduct is misconduct actionable at law.

79.    Debtor relied on the guidance and instruction rendered by Defendant as being prudent and appropriate as such guidance and instruction is afforded by other managers and fiduciaries, under the particular circumstances of the case and under prevailing bankruptcy and common law.

80.    As a direct result of the Defendant's negligent exercise of control and decision making authority, and Defendant's failure to preserve Debtor's rights in a timely manner within

8228848.1

the statutory time period, Debtor's Lease was rejected by operation of law, which  resulted in a financial loss to Debtor's bankruptcy estate and such negligence on the part of Defendant was the proximate cause thereof and a substantial factor is the losses sustained by the Debtor's estate.

81.     Debtor was required to negotiate a replacement lease on harsher, more onerous and less favorable financial terms.

82.     By reason of the foregoing, Debtor was, at a minimum, damaged in an amount equal to the difference between the fair market value of its leasehold position had the Lease been assumed and the value of the leasehold position without the original Lease in force but instead with more onerous terms the newly imposed Lease required.

83.     Debtor had a valuable leasehold interest in the Lease  because the contract rental reserved under said Lease were less than the market rental thereof and less than the rent reserved under the replacement lease.

84.     Debtor had a rental advantage at the leased premises equal to the difference between the rent reserved in said Lease and the rent reserved under the replacement lease.

85.     By reason of the foregoing, Debtor was deprived of its rental advantage and was damaged thereby in an amount to be determined at trial.

86.     But for Defendant's negligent exercise of control and decision making authority and Defendant's failure to timely preserve Debtor's rights under prevailing bankruptcy law and to otherwise move to assume Debtor's Lease, Debtor would have assumed the Lease included in the bankruptcy estate.

87.     But for Defendant's negligence and breach of fiduciary duty, Debtor could have subleased or assigned the Lease to a third party and/or its landlord for an amount equal to its

leasehold interest and/or sold the diner/restaurant with the Lease in force at a higher consideration than under the deal that was ultimately reached.

88.     By reason of Defendant's negligent exercise of control and decision making authority, Debtor was deprived of the opportunity to assign or sublease the Lease and/or sell the diner/restaurant with the original favorable long term leasehold, all to its damage in an amount to be determined at trial.

89.     As a direct result of Defendant's negligent exercise of control and decision making authority, Debtor was compelled to settle the bankruptcy proceeding and to liquidate its business assets and was deprived of obtaining the maximum going concern value of its diner/restaurant, and of its Lease at the Debtor's Property.

90.     By motion filed on June 29, 2023 [ECF Doc. No. 197] (the "Sale Motion"), the Trustee sought approval of the Court to sell the Diner Business.

91.     As part of the Sale Motion, the Trustee sought approval of a stalking horse contract (the "APA") between the Trustee, solely in his capacity as Chapter 7 trustee of the Debtor's estate, as seller and Brooklyn 24 HRS LLC, as purchaser (the "Sale").

92.     The Sale was subject to higher or better offers.

93.     The Sale did not include the Lease.

94.     The Sale was conditioned on the Landlord issuing a new lease to the successful purchaser.

95.     The purchase price for the Business in the APA was $1,750,000, with $500,000.00 of that to be paid in cash and the balance of $1,250,000 paid through a promissory note payable to 518 Metropolitan.

8228848.1

96.     After notice and hearing, the Court considered the Sale Motion and entered an order on July 18, 2023 [ECF Doc. No. 203] (the "Business Sale Order") authorizing the Trustee to complete such sale to the Buyer as purchaser under the terms of the APA, subject to an approved auction process.

97.     By order entered on July 28, 2023, the Court approved the Sale of the Business to the Buyer for $1,825,000.00.

98.     The closing on the Sale occurred on July 31, 2023.

99.     As part of the closing on the Sale, the Landlord and the Purchaser entered into a new lease for the Premises dated July 31, 2023 (the "New Lease").

100.    The New Lease committed the Purchaser to a thirty (30) year term commencing on August 1, 2023 and expiring on July 31, 2053, with no right to renew.

101.    The New Lease does not address the coming lapse of a substantial tax abatement that ends in 2035-36 that will result in the Purchaser having to pay under the Lease an additional approximately $81,000.00 per month in additional real estate taxes.  That equates to an additional approximately $972,000.00 of added expenses.

102.    The Landlord was only willing to enter into a new thirty (30) year lease and refused to adjust that new lease to address the substantially increased real estate taxes starting in 2035-36.

103.    Because of the deemed rejection of the Lease, the Landlord gained substantial leverage over the Debtor and the Debtor's estate and any potential purchaser of the Business because it was not obligated to give a new lease.

104.    If the Lease had been assumed, or not been rejected by failure to assume it by the Assumption/Rejection Deadline, the Debtor and its estate would have had more leverage over the

16

Prior Owner Parties in Plan or sale negotiations.

105.     By reason of the foregoing, Debtor was damaged by Defendant's course of conduct in an amount to be determined at trial but believed to be not less than Nine Hundred Seventy-Two Thousand ($972,000.00) Dollars.

**AS AND FOR A SECOND CAUSE OF ACTION
AGAINST DEFENDANT SIDERAKIS
(Breach of Fiduciary Duty, Corporate Mismanagement and Waste
– Failure to Pay Taxes)**

106.     Plaintiff repeats and realleges each and every allegation as set forth in Paragraphs "1" through "105" as though fully set forth herein.

107.     Defendant owed a duty to Debtor to exercise such skill, prudence and diligence commonly possessed and exercised by fiduciaries under similar facts and circumstances, to operate Debtor in a competent manner and to provide proper instructions and direction in connection with the matter in which Defendant was acting as a fiduciary.

108.     Defendant was entrusted with the duty of managing the property of the corporation in good faith, according to her best judgment and skill, and in the interest of all of the stakeholders.

109.     The actions of Defendant demonstrated that she failed to discharge her duties in a reasonable and prudent fashion, thereby depriving the stakeholders and the creditors of what was owed them.

110.     While the Debtor was in possession and operating the diner/restaurant, Defendant directed employees of Debtor to neglect their obligations resulting in the Debtor's failure to pay New York State and New York City taxes and other charges imposed by governmental authorities including the New York State Department of Labor.

111.     Defendant directed, permitted and otherwise instructed the Debtor not to pay sales

tax money collected by the Debtor, and due to the State of New York and/or the City of New York.

112.    Defendant directed, permitted and otherwise instructed the Debtor not to pay unemployment insurance contributions due the New York State Department of Labor.

113.    As a direct result of Defendant's negligent advice, instruction and direction, the Debtor incurred interest and penalties for nonpayment of State and City taxes and other charges imposed by governmental authorities including the New York State Department of Labor and the Debtor estate was diminished to the detriment of its stakeholders including its creditors.

114.    By reason of the foregoing, Debtor was damaged by Defendant's course of conduct in an amount to be determined at trial but believed to be not less than Fifty Thousand ($50,000.00) Dollars.

## AS AND FOR A THIRD CAUSE OF ACTION
## AGAINST DEFENDANT SIDERAKIS
### (Breach of Fiduciary Duty, Corporate Mismanagement and Waste
### – Failure to Pay Wages)

115.    Plaintiff repeats and realleges each and every allegation as set forth in Paragraphs "1" through "114" as though fully set forth herein.

116.    Defendant directed, permitted and otherwise instructed the Debtor not to pay the wages due employees.

117.    Defendant's course of conduct brought about an action pursuant to the Fair Labor Standards Act (hereinafter referred to as "FLSA"), 29 U.S.C. §§206, 207, and 216(b); New York Labor Law § 190 *et seq.*; New York Labor Law §§ 663 and 650 *et seq*.; New York Labor Law §§ 193 and/or 198-b and 12 New York Codes, Rules, and Regulations (hereinafter referred to as "NYCRR") §§ 146 *et seq.* to recover minimum wages, overtime compensation, spread of hours compensation, unlawful deductions, uniform maintenance pay and damages arising from record-

18

keeping violations owed to various former employees of Debtor (the "Wage Litigation").

118.    That action is pending in the United States District Court, Eastern District of New York, *Romero v. Sid Boys Corp. d/b/a Kellogg's Diner et al.*, Case No.: 18cv6583 (ARR)(CLP).

119.    The plaintiffs in the Wage Litigation agreed to a resolution of the claims which as a condition to the settlement, would be part of the anticipated Plan Confirmation.

120.    Because the Plan Confirmation deadline passed on December 30, 2022 without the Debtor confirming a plan or obtaining a signed order further extending its time to confirm a plan, the proposed resolution of the Wage Litigation was not consummated, and the litigation remains unresolved and pending.

121.    By reason of the foregoing, Debtor was damaged by Defendant's course of conduct in an amount to be determined at trial but believed to be not less than Seven Hundred Fifty Thousand ($750,000.00) Dollars.

**AS AND FOR A FOURTH CAUSE OF ACTION**
**<u>AGAINST DEFENDANT SIDERAKIS</u>**
**(Breach of Fiduciary Duty, Corporate Mismanagement and Waste**
**– Misappropriation of Corporate Assets, Looting)**

122.    Plaintiff repeats and realleges each and every allegation as set forth in Paragraphs "1" through "121" as though fully set forth herein.

123.    Defendant knowingly and intentionally misappropriated corporate assets (money) without a good faith belief that the use of funds was for a proper corporate purpose.

124.    Witnesses reported that during their time as being employed by Debtor under the ownership and management of Irene Saderakis, Ms. Siderakis would frequently have a sign placed at the Diner on the weekends that stated that only cash was being accepted and that the ATM located in the vestibule could be utilized to withdraw cash.

19

125.    Witnesses further reported that Ms. Siderakis would then withdraw the cash from the safe and that the cash sales were not entered into the cash register POS ("Point of Sale") system (the "Weekend Cash Sweeps").

126.    Upon information and belief, Ms. Siderakis would engage in Weekend Cash Sweeps at other times outside of the weekend operations (the "Cash Sweeps").

127.    Defendant disregarded the basic rule of corporate law that a corporation is legally distinct from those who own the corporation (i.e., its shareholders or those who own an equity interest in the corporation), which means that if a corporation owns property—such as money in a bank account—then the property is not owned by the corporation's owners.

128.    The basic tenet of American corporate law that the corporation and its shareholders are distinct entities and that [a]n individual shareholder, by virtue of his ownership of shares, does not own the corporation's assets and therefore the shareholder can not use the corporations assets for her own and exclusive benefit, was ignored by Defendant as she diverted and used corporate assets.

129.    The amended Statement of Financial Affairs (question 4 and attachment B) filed in the bankruptcy proceeding discloses three unusual payments to Ms. Siderakis totaling $54,681.88 (collectively, the "Check Transfers") made just two weeks before the bankruptcy filing.

130.    The Debtor booked at least $39,297.32 of such payments as having been made to a third-party vendor. However, Saderakis actually directed that the foregoing amount be drawn equal to the employee retention credit that the Diner Business received from the federal government and payable to cash which was endorsed by Irene Saderakis. Debtor did not report this as income to Ms. Siderakis on its tax return.

131.    The original amended Statement of Financial Affairs, signed by Ms. Siderakis under the penalty of perjury, disclosed no insider payments.

132.    Defendant improperly paid vendors and employees cash for salary and services rendered.

133.    Although is well established that shareholders do not hold legal title to any of the corporation's assets but the corporation —the entity itself—is vested with the title,  Defendant deliberately disregarded this principal through her course of conduct.

134.    A corporation and its stockholders are separate entities and the title to the corporate property is vested in the corporation and not in the owner of the corporate stock, however, Defendant misappropriated and otherwise wasted corporate assets utilizing the same for her personal gain.

135.    The funds alleged to have been misappropriated were, at the time of their misappropriation, owned by or under the care, custody, or control of Debtor.

136.    By reason of the foregoing, Debtor was damaged by Defendant's course of conduct in an amount to be determined at trial but believed to be not less than One Hundred Thousand ($100,000.00) Dollars.

### AS AND FOR A FIFTH CAUSE OF ACTION
### AGAINST DEFENDANT SIDERAKIS
### (Breach of Fiduciary Duty, Corporate Mismanagement and Waste
### –Trustee Commissions)

137.    Plaintiff repeats and realleges each and every allegation as set forth in Paragraphs "1" through "136" as though fully set forth herein.

138.    The deadline for a small business debtor to file a plan to the exclusion of all other persons is one-hundred eighty (180) days after the Petition Date.

8228848.1

139.    The 180th day after the Petition Date was Thursday, February 24, 2022.

140.    The Debtor did not file any plan on or before February 24, 2022.

141.    The Bankruptcy Code permits a debtor extend the plan filing deadline, provided, however, that "the plan and disclosure statement (if any) shall be filed no later than 300 days after the date of the order for relief."  11 U.S.C. § 1121(e)(2).

142.    The 300th day after the Petition Date was Friday, June 24, 2022.

143.    A small business debtor must receive court approval confirming a filed plan not later than 45 days after the plan is filed unless the time for confirmation is extended in accordance with 1121(e)(3)."  11 U.S.C. § 1129(e).

144.    A debtor may extend the 180 day and 300 day deadlines for filing of a plan and the 45 days to confirm a plan after filing only if, among other requirements, "the order extending time is signed before the existing deadline has expired."  11 U.S.C. § 1121(e)(3)(C).

145.    The Debtor filed a Chapter 11 Small Business Disclosure Statement on June 24, 2022.  [ECF Doc. No. 73] (the "Plan").

146.    Unless extended by the Court, the Debtor had until Monday, August 8, 2022 by which to confirm the Plan.

147.    The Debtor filed a Chapter 11 Small Business Plan, dated June 24, 2022 on June 24, 2022.

148.    By application [ECF Doc. No. 77] (the "First Extension Application") filed and served on July 7, 2022, within 45 days after the date the Plan was filed, the Debtor sought to extend its period of time by which to confirm the Plan.

149.    The Court held a hearing on the First Extension Application on July 28, 2022.

150.    On July 28, 2022, the Court entered an order [ECF Doc. No. 83] extending the Debtor's deadline to confirm the Plan through and including September 22, 2022 (the "First Extended Deadline").

151.    By application [ECF Doc. No. 91] (the "Second Extension Application.") filed and served on August 29, 2022, the Debtor sought to extend further its period of time by which to confirm the Plan.

152.    Prior to the First Extended Deadline, the Debtor and several other parties, including the Prior Owner Entities entered into a stipulation whereby the Debtor could have until October 31, 2022 to confirm the Plan with such extended time being without objection by the counter-parties to the stipulation.

153.    On September 21, 2022, the Court held a hearing on the Second Extension Application and granted the relief sought.

154.    On September 23, 2022, the Court signed and entered an order further extending the period of time by which the Debtor must confirm the Plan to October 31, 2022 (the "Second Extended Deadline").

155.    By application [ECF Doc. No. 119] (the "Third Extension Application," and collectively with the First Extension Application and the Second Extension Application, the "Plan Confirmation Deadline Applications") filed on October 14, 2022, the Debtor sought to extend further its period of time by which to confirm the Plan from October 31, 2022, to December 30, 2022.

156.    On October 31, 2022, the Court held a hearing on the Third Extension Application and granted the relief sought.

157.    On November 3, 2022, the Court signed and entered an order further extending the period of time by which to confirm the Plan from October 31, 2022, to December 30, 2022.

158.    For each of the extensions, the Court found that "[i]t is more likely than not that a plan of reorganization will be confirmed within a reasonable period of time."

159.    The Third Plan Confirmation Extension Deadline passed on December 30, 2022 without the Debtor confirming a plan or obtaining a signed order further extending its time to confirm a plan.

160.    On January 30, 2023, the Debtor's bankruptcy proceeding was converted from a Chapter 11 proceeding to a proceeding pursuant to Chapter 7 of the United States Bankruptcy Code.

161.    As a direct and proximate result of Defendant's course of conduct which directly caused the conversion of this case, the Debtor's Estate will, to the detriment of its creditors, incur substantial damages in the form of commissions to be paid to the Trustee for all monies disbursed in the case by the Trustee which claim was solely and completely created as a result of the conversion of the Case, thereby damaging the Debtor's Estate in an amount to be proven at trial, but approximately $135,000.00.

**AS AND FOR A SIXTH CLAIM FOR RELIEF**
**AGAINST THE DEFENDANT SIDERAKIS**
**11 U.S.C. §§ 548(a)(1)(A), 550**

162.    Plaintiff repeats and realleges each and every allegation in paragraphs "1" through "161" as though more fully set forth word for word herein.

163.    In August 2021, the Debtor made the Check Transfers directly or indirectly to Defendant.

164.    Upon information and belief, during the two (2) years prior to the Petition Date, the Defendant engaged in Cash Sweeps (the "Cash Sweep Transfers," and collectively with the Check Transfers, the "Two-Year Transfers").

165.    The Two-Year Transfers totaled no less than $54,681.88.

166.    Prior to the Petition Date, and at the time of each and all of the Two-Year Transfers, the Debtor was insolvent or was rendered insolvent thereby.

167.    Upon information and belief, the Two-Year Transfers were made without the providing of fair consideration or reasonably equivalent value by Defendant in exchange for such transfers.

168.    The Two-Year Transfers were made within two (2) years of the Petition Date.

169.    The Two-Year Transfers were made from Debtor funds and constituted an interest of the Debtor in property.

170.    At the time each of the Two-Year Transfers were made, upon information and belief, as of the Petition Date, there existed actual unsecured creditors of the Debtor, including, but not limited to, 514 Fioto Property Corp., 518 Metropolitan Ave. Corp., the New York State Department of Labor, and the Small Business Administration, which could have avoided any transfer of an interest of the Debtor in property.

171.    The Two-Year Transfers were made to Defendant with actual intent to hinder, delay or defraud the Debtor's creditors, including 514 Fioto Property Corp., 518 Metropolitan Ave. Corp., the New York State Department of Labor, and the Small Business Administration, under Bankruptcy Code § 548(a)(1)(A).

172.    Based upon the foregoing, the Plaintiff is entitled to judgment against the Defendant (i) avoiding the Two-Year Transfers under Bankruptcy Code § 548(a)(1)(A), and (ii) pursuant to

11 U.S.C. §§ 550(a) and 551, may recover from Defendant an amount equal to the Two-Year Transfers, which amount is not less than $54,681.88, but in an amount to be proven at trial, plus appropriate interest thereon.

**AS AND FOR A SEVENTH CLAIM FOR RELIEF
AGAINST THE DEFENDANT SIDERAKIS
11 U.S.C. §§ 548(a)(1)(B), 550**

173.    Plaintiff repeats and realleges each and every allegation in paragraphs "1" through "172" as though more fully set forth word for word herein.

174.    The Two-Year Transfers were made within two (2) years of the Petition Date.

175.    The Two-Year Transfers were made to Defendant from Debtor funds and constituted an interest of the Debtor in property.

176.    The Debtor received less than a reasonably equivalent value in exchange for the Two-Year Transfers.

177.    Upon information and belief, the Debtor (i) was insolvent on the date that the Two-Year Transfers were made or became insolvent as a result of the Two-Year Transfers, (ii) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the Debtor was unreasonably small capital, or (iii) intended to incur, or believed that it would incur, debts that would be beyond its ability to pay as they matured.

178.    The Two-Year Transfers constitute avoidable transfers pursuant to Bankruptcy Code § 548(a)(1)(B).

179.    Based upon the foregoing, the Plaintiff is entitled to judgment against the Defendants (i) avoiding the Two-Year Transfers under Bankruptcy Code § 548(a)(1)(B), and (ii) pursuant to 11 U.S.C. §§ 550(a) and 551, may recover from Defendants an amount equal to the

8228848.1

Two-Year Transfers, which amount is not less than $54,681.88, but in an amount to be proven at trial, plus appropriate interest thereon.

**AS AND FOR AN EIGHTH CLAIM FOR RELIEF**
**AGAINST THE DEFENDANT SIDERAKIS**
**11 U.S.C. §§ 544(b), 550, DCL § 274**

180.    Plaintiff repeats and realleges each and every allegation in paragraphs "1" through "179" as though more fully set forth word for word herein.

181.    Between April 25, 2018 and the Petition Date the Debtor transferred money to the Defendant, including, but not limited to the Two-Year Transfers, which the Defendant did not earn and was otherwise not entitled to whether through Cash Sweeps or otherwise (the "Transfers").

182.    Upon information and belief, the Debtor was either insolvent at the time it caused the Transfers to be made to Defendant or were rendered insolvent thereby within the meaning of DCL § 271.

183.    Upon information and belief, on the dates of the Transfers, the value of the Debtor's assets was less than the amount required to pay the Debtor's existing debts as such debts became absolute and mature.

184.    Upon information and belief, the Debtor did not receive reasonably equivalent value in exchange for the Transfers within the meaning of DCL § 272.

185.    Upon information and belief, as of the Petition Date, there existed actual unsecured creditors of the Debtor (*e.g*., 514 Fioto Property Corp., 518 Metropolitan Ave. Corp., the New York State Department of Labor, and the Small Business Administration) which could have avoided any transfer of an interest of the Debtor in property that is avoidable under DCL § 274 by

27

a creditor holding an unsecured claim that is allowable under 11 U.S.C. § 502 or that is not allowable only under 11 U.S.C. § 502(e).

186.    Pursuant to 11 U.S.C. § 544(b)(1), the Trustee may avoid any transfer of an interest of the Debtor in property that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under 11 U.S.C. § 502.

187.    Upon information and belief, the Transfers were fraudulent transfers pursuant to DCL § 274 since the Debtor did not receive reasonably equivalent value therefor while the Debtor was insolvent at that time or rendered insolvent as a result of the Transfers.

188.    By virtue of the foregoing, Plaintiff is entitled to judgment against the Defendant pursuant to DCL § 274 finding that the Transfers were fraudulent conveyances and consequently setting aside such transfers pursuant to Bankruptcy Code §§ 544(b), 550(a) and 551, and awarding the Plaintiff damages in the sum of not less than $54,681.88 but in an amount to be proven at trial, plus appropriate interest thereon.

**AS AND FOR A NINTH CLAIM FOR RELIEF**
**AGAINST THE DEFENDANT SIDERAKIS**
**11 U.S.C. §§ 544(b), 550, DCL § 273(a)(2)(i)**

189.    Plaintiff repeats and realleges each and every allegation in paragraphs "1" through "188" as though more fully set forth word for word herein.

190.    Upon information and belief, the Debtor did not receive reasonably equivalent value within the meaning of DCL § 272 in exchange for the Transfers.

191.    Upon information and belief, on the dates of the Transfers, the Debtor was engaged in a business or a transaction for which the reaming assets of the Debtor were unreasonably small in relation to the business or transaction.

192.    Upon information and belief, on the Petition Date, there were and are actual existing unsecured creditors, including 514 Fioto Property Corp., 518 Metropolitan Ave. Corp., the New York State Department of Labor, and the Small Business Administration, holding claims allowable under Bankruptcy Code § 502 that are allowable under Bankruptcy Code § 502(e), who could have avoided the Transfers Avoidable Under NYDCL under DCL § 273(a)(2)(i).

193.    Pursuant to 11 U.S.C. § 544(b)(1), the Trustee may avoid any transfer of an interest of the Debtor in property that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under 11 U.S.C. § 502.

194.    Upon information and belief, the Transfers were fraudulent transfers as to the Debtor's present and future creditors because Debtor did not receive reasonably equivalent value within the meaning of DCL § 272 in exchange for the Transfers and since such transfers left the Debtor with remaining assets that were unreasonably small in relation to the business or transaction.

195.    By virtue of the foregoing, Plaintiff is entitled to judgment against Defendant pursuant to DCL § 273(a)(2)(i) finding that the Transfers were fraudulent conveyances and consequently setting aside such transfers pursuant to Bankruptcy Code §§ 544(b) and 550(a) and awarding the Plaintiff damages in the sum of not less than $54,681.88, but in an amount to be proven at trial, plus appropriate interest thereon.

**AS AND FOR A TENTH CLAIM FOR RELIEF**
**AGAINST THE DEFENDANT SIDERAKIS**
**11 U.S.C. §§ 544(b), 550, DCL § 273(a)(2)(ii)**

196.    Plaintiff repeats and realleges each and every allegation in paragraphs "1" through "195" as though more fully set forth word for word herein.

29

197.    Upon information and belief, the Debtor did not receive reasonably equivalent value within the meaning of DCL § 272 in exchange for the Transfers.

198.    Upon information and belief, on the dates of the Transfers, the Debtor intended to incur, or believed or reasonably should have believed that the Debtor would incur, debts beyond the Debtor's ability to pay as they became due.

199.    Upon information and belief, the Debtor's knowledge of such inability to pay such debts requires that the Transfers be declared fraudulent conveyances under DCL § 273(a)(2)(ii).

200.    The Transfers were fraudulent conveyances pursuant to DCL § 273(a)(2)(ii).

201.    Upon information and belief, on the Petition Date, there were actual existing unsecured creditors, including 514 Fioto Property Corp., 518 Metropolitan Ave. Corp., the New York State Department of Labor, and the Small Business Administration, holding claims allowable under Bankruptcy Code § 502 that are allowable under Bankruptcy Code § 502(e), who could have avoided the Transfers under DCL § 273(a)(2)(ii).

202.    Pursuant to 11 U.S.C. § 544(b)(1), the Trustee may avoid any transfer of an interest of the Debtor in property that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under 11 U.S.C. § 502.

203.    Accordingly, the Plaintiff requests a judgment against Defendant finding that the Transfers were fraudulent conveyances pursuant to DCL § 273(a)(2)(ii) and consequently setting aside such transfers pursuant to Bankruptcy Code §§ 544(b) and 550(a) and awarding the Plaintiff damages in the sum of not less than $54,681.88, but in an amount to be proven at trial, plus appropriate interest thereon.

**AS AND FOR AN ELEVENTH CLAIM FOR RELIEF
AGAINST THE DEFENDANT SIDERAKIS**

8228848.1

**11 U.S.C. §§ 544(b), 550, DCL § 273(a)(1)**

204.    Plaintiff repeats and realleges each and every allegation in paragraphs "1" through "203" as though more fully set forth word for word herein.

205.    Upon information and belief, on the Petition Date, there were actual existing unsecured creditors holding claims allowable under Bankruptcy Code § 502 that are allowable under Bankruptcy Code § 502(e), who could have avoided the Transfers Avoidable Under NYDCL under DCL § 273(a)(1).

206.    Pursuant to 11 U.S.C. § 544(b)(1), the Trustee may avoid any transfer of an interest of the Debtor in property that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under 11 U.S.C. § 502.

207.    During the period within two years of the Petition Date, the Debtor transferred the Transfers to Defendant in the total amount of no less than $54,681.88, but in an amount to be proven at trial.

208.    The Transfers in the amount of no less than $54,681.88, but in an amount to be proven at trial, could have been utilized to pay a portion of the claims of the 514 Fioto Property Corp., 518 Metropolitan Ave. Corp., the New York State Department of Labor, or the Small Business Administration.

209.    The Transfers were made with actual intent to defraud 514 Fioto Property Corp., 518 Metropolitan Ave. Corp., the New York State Department of Labor, and the Small Business Administration.

210.    By virtue of the foregoing, Plaintiff requests a judgment against Defendant finding that the Transfers were fraudulent conveyances pursuant to DCL § 273(a)(1) and consequently

31

setting aside such transfers pursuant to Bankruptcy Code §§ 544(b) and 550(a) and awarding the

Plaintiff damages in the sum of not less than $54,681.88, but in an amount to be proven at trial,

plus appropriate interest thereon.

## AS AND FOR A TWELFTH CLAIM FOR RELIEF
## AGAINST THE DEFENDANT SIDERAKIS
### 11 U.S.C. §§ 544(b), 550, DCL § 276-a

211.    Plaintiff repeats and realleges each and every allegation in paragraphs "1" through

"210" as though more fully set forth word for word herein.

212.    In the event the Court determines that the Plaintiff may avoid the Transfers and

recover the value thereof for the benefit of the Debtor's Estate pursuant to Bankruptcy Code §§

544(b) and 550 and DCL § 273, the Plaintiff is entitled to an award of attorneys' fees and expenses

pursuant to DCL § 276-a.

213.    By virtue of the foregoing Plaintiff seeks a judgment in the amount of the attorneys'

fees and expenses it incurs in connection with this action.

## AS AND FOR AN THIRTEENTH CLAIM FOR RELIEF
## AGAINST THE DEFENDANT SIDERAKIS
### Unjust Enrichment

214.    Plaintiff repeats and realleges each and every allegation in paragraphs "1" through

"213" as though more fully set forth word for word herein.

215.    The Transfers to the Defendant were impermissible transfers of the Debtor's

interest in property.  Consequently, Defendant was the ultimate beneficiary of such transfers under

circumstances in which Defendant would be unjustly enriched if they were to retain such transfers,

since the Debtor did not receive reasonably equivalent value therefor.

216.    As a result, Defendant were unjustly enriched and may not in equity and good

8228848.1

conscience retain the Transfers.

217.    Based upon the foregoing, Defendant is liable to Plaintiff under New York common law for unjust enrichment in an amount as yet to be determined, but in no event less than $54,681.88, but in an amount to be proven at trial, plus appropriate interest thereon.

**AS AND FOR A FOURTEENTH CLAIM FOR RELIEF**
**<u>AGAINST DEFENDANT SIDERAKIS</u>**
**11 U.S.C. §§ 105(a), 549, 550**

218.    Plaintiff repeats and realleges each and every allegation in paragraphs "1" through "217" as though more fully set forth word for word herein.

219.    Upon information and belief, between January 30, 2022 and January 30, 2023, Defendant Siderakis received the proceeds from Cash Sweeps to which she was not entitled (the "Post-Petition Cash Sweeps").

220.    The Post-Petition Cash Sweeps were paid from funds belonging to the Debtor's estate.

221.    The Post-Petition Cash Sweeps constituted transfers of property of the Debtor's estate.

222.    Upon information and belief, none of the Post-Petition Cash Sweeps were authorized under § 303(f) of the Bankruptcy Code.

223.    Upon information and belief, such Post-Petition Cash Sweeps were not authorized under § 542(c) of the Bankruptcy Code.

224.    Upon information and belief, at the time each and every of the Post-Petition Cash Sweeps were made, such transfers were neither authorized by any provision of the Bankruptcy Code nor by any order of the Court.

225.    As a direct result of the Post-Petition Cash Sweeps, the Debtor's estate was depleted by an amount equal to the Post-Petition Cash Sweeps which would have otherwise been available for the Debtor's creditors.

8228848.1

226. To date, Defendant Siderakis refused and has failed to acknowledge or return the Post-Petition Cash Sweeps to the Debtor's Estate.

227. Based upon the foregoing, Plaintiff is entitled to a judgment (i) pursuant to Bankruptcy Code § 549(a) avoiding the Post-Petition Cash Sweeps, and (ii) pursuant to 11 U.S.C. §§ 550(a) and 551, recovering from Defendant Siderakis the amount of the Post-Petition Cash Sweeps, in an amount to be proven at trial, plus appropriate interest thereon.

### AS AND FOR A FIFTEENTH CAUSE OF ACTION
**(Expunge Claims)**

228. Plaintiff repeats and realleges each and every allegation as set forth in Paragraphs "1" through "227 as though fully set forth herein.

229. On March 30, 2023 Defendant Irene Siderakis filed a claim against the Debtor in the amount of $420,924.00 purportedly on the basis that the same was a shareholder loan, initial investment.

230. On March 30, 2023 the Defendant Estate of Christos Siderakis through Defendant Irene Siderakis filed a claim against the Debtor in the amount of $460,222.00 purportedly on the basis that the same was a shareholder loan, initial investment.

231. The foregoing claims are unsubstantiated and undocumented and therefore invalid.

232. The foregoing claims were capital contributions or equity infusions to the Debtor.

233. By reason of the foregoing, the Plaintiff is entitled to an order expunging the claims filed by Defendant Irene Siderakis individually and as administrator of the Estate of Christos Siderakis.

**WHEREFORE**, it is respectfully requested that judgment be entered in favor of Plaintiff and against Defendants as follows:

(1)     On the first cause of action for Breach of Fiduciary Duty, Corporate Mismanagement and Waste – Lease Rejection, in an amount to be determined at trial; but not less than Nine Hundred Seventy-Two Thousand ($972,000.00) Dollars together with interest and costs; and

(2)     On the second cause of action for Breach of Fiduciary Duty, Corporate Mismanagement and Waste – Failure to Pay Taxes, in an amount to be determined at trial; but not less than Fifty Thousand ($50,000.00) Dollars, together with interest and costs; and

(3)     On the third cause of action for Breach of Fiduciary Duty, Corporate Mismanagement and Waste – Failure to Pay Wages, in an amount to be determined at trial; but not less than Seven Hundred Fifty Thousand ($750,000.00) Dollars, together with interest and costs; and

(4)     On the fourth cause of action for Breach of Fiduciary Duty, Corporate Mismanagement and Waste – Misappropriation of Corporate Assets, Looting, in an amount to be determined at trial; but not less than One Hundred Thousand ($100,000.00) Dollars, together with interest and costs; and

(5)     On the fifth cause of action for Breach of Fiduciary Duty, Corporate Mismanagement and Waste –Trustee Commissions, in an amount to be determined at trial, together with interest and costs; and

(6)     On the sixth cause of action for an order granting the avoidance and recovery of the Pre-Petition Transfer in the sum of not less than $54,681.88, plus appropriate

35

interest, as fraudulent transfers pursuant to Bankruptcy Code §§ 548(a)(1)(A), 550 and 551; and

(7)    On the seventh cause of action for an order granting the avoidance and recovery of the Pre-Petition Transfer in the sum of not less than $54,681.88, plus appropriate interest, as fraudulent transfers pursuant to Bankruptcy Code §§ 548(a)(1)(B), 550 and 551; and

(8)    On the eighth cause of action for an order granting the avoidance and recovery of the Pre-Petition Transfer in the sum of not less than $54,681.88, plus appropriate interest, pursuant to DCL § 274 and Bankruptcy Code §§ 544(b), 550 and 551; and

(9)    On the ninth cause of action for an order granting the avoidance and recovery of the Pre-Petition Transfer in the sum of not less than $54,681.88, plus appropriate interest, pursuant to DCL § 273(a)(2)(i) and Bankruptcy Code §§ 544(b), 550 and 551; and

(10)    On the tenth cause of action for an order granting the avoidance and recovery of the Pre-Petition Transfer in the sum of not less than $54,681.88, plus appropriate interest, pursuant to DCL § 273(a)(2)(ii) and Bankruptcy Code §§ 544(b), 550 and 551; and

(11)    On the eleventh cause of action for an order granting the avoidance and recovery of the Pre-Petition Transfer in the sum of not less than $54,681.88, plus appropriate interest, pursuant to DCL § 273(a)(1) and Bankruptcy Code §§ 544(b), 550 and 551; and

(12)    On the twelfth cause of action for an order awarding of attorneys' fees pursuant to DCL § 276-a and Bankruptcy Code § 544(b) in an amount to be determined

after trial; and

(13)    On the thirteenth cause of action for an order granting judgment against Defendant Siderakis Judgment under New York common law for unjust enrichment in an amount as yet to be determined, plus appropriate interest thereon; and

(14)    On the fourteenth cause of action for an order expunging the claims filed by Defendant Irene Siderakis individually and as administrator of the Estate of Christos Siderakis; and

(15)    For such other, further and different relief the Court deems just, proper and equitable.

Dated:  East Meadow, New York
            January 30, 2024

> **CERTILMAN BALIN ADLER & HYMAN, LLP**
> Attorneys for Richard J. McCord as
> Chapter 7 Trustee for the Estate of
> Sid Boys Corp. dba Kellogg's Diner
>
>
> By:      ___/s/Robert D. Nosek_____
>         **ANTHONY W. CUMMIMNGS, ESQ.**
>         **Robert D. Nosek, Esq.**
>         90 Merrick Avenue, 9th Floor
>         East Meadow, New York 11554
>         (516) 296-7000

## **RESERVATION OF RIGHTS**

98.      It is the intent of the Plaintiff to recover the transfers of property of the Debtor made to Cloverdale and/or Caiazzo prior to the Petition Date and, as such, hereby specifically reserves its rights to amend this Complaint to seek to recover such additional transfers, if any, that are not identified herein, to bring any and all other causes of action that it may maintain against Defendants, including, without limitation, causes of action arising out of the same transaction(s) set forth herein, to the extent discovery in this action or further investigation by the Plaintiff reveals such additional transfers or further causes of action.

8228848.1